# United States Bankruptcy Court

## Middle District of North Carolina

In re   **EI LLC**                                                    )
                                                                      )
_____                          )
                    Debtor                                            )      **Case No. 18-50945**
                                                                      )
Address    2865 N. Cannon Boulevard                                   )
           Kannapolis, NC 28038-9124                                  )
                                                                      )      **Chapter 7**
                                                                      )
Employer's Tax Identification (EIN) No(s).(if any): 90-0946099        )

## MOTION FOR APPROVAL OF SETTLEMENT
## OF CLAIM #9 OF MADISON CAPITAL FUNDING LLC AS AGENT

C. Edwin Allman, III, Trustee, respectfully moves the Court for entry of an Order, pursuant to Bankruptcy Rule 9019 approving the settlement of Claim Number 9 of Madison Capital Funding LLC as agent for certain lenders ("Madison") asserted pursuant to 11 U.S.C. § 507(b) for the sum of $4.85 million and for certain other related relief. In support of this Motion[1], the Trustee alleges:

### Summary of Relief Requested

1.     By this Motion the Trustee seeks approval of the compromise and settlement of Madison's 507(b) claim in this case in the amount $4.85 million. In addition, the Trustee seeks authority to pay Madison's cash collateral remaining in the Trustee's accounts in this case and the companion case of Product Quest Manufacturing, LLC (18-50946) ("PQM") and to convey to Madison all remnant assets, if any, in the two cases in full satisfaction of Madison's secured claim. Finally, the Trustee requests that Madison's general unsecured claim be allowed in the amount of  $129,936,630.59 with such unsecured claim being subordinate to the first $150,000.00 distributed in the aggregate to general unsecured creditors holding valid claims in this case and the companion case of PQM following which the Madison general unsecured claim will share proportionately with the valid general secured claims in each case.

### Background

2.     This case was originally filed as a Chapter 11 case on September 7, 2018, along with companion Chapter 11 cases Product Quest Manufacturing, LLC (18-50946); Scherer Labs International LLC (18-50948); Product Quest Logistics, LLC (18-50950);

---

[1] A separate, almost identical Motion is being filed contemporaneously in the case of  Product Quest Manufacturing, LLC (18-50946) regarding Madison Claim Number 59.  The Ei and Product Quest Manufacturing estates are jointly and severally liable for payment of the Madison Claim as well as the WARN Claim more particularly described herein.

JBTRS, LLC (18-50951); and, PQ Real Estate, LLC (18-50952) (the "Related Cases"). Of the Related Cases only the Debtor herein ("Ei") and PQM were operating concerns. Ei was a pharmaceutical and personal care product company based in Kannapolis, North Carolina, and PQM was a personal care product company located in Daytona Beach, Florida.

3.      From the outset it was clear that the Debtors would be unable to reorganize and remain in business as a going concern. Substantial quality control and regulatory problems necessitated the discontinuance of the Florida operations in early August 2018 and the North Carolina operations in September 2018, more or less contemporaneously with the Chapter 11 filing.

4.      At the time of the filing the Debtors were highly leveraged. Madison was owed in excess of $150 million, a sum that was secured by virtually all of the Debtor's assets. Prior to and immediately following the filing, the Debtors' management team largely consisted of the consulting and restructuring firm Conway McKenzie Management Services, LLC ("Conway McKenzie"). The Debtors' initial efforts in the case focused on the marketing and sale of its assets on a turnkey basis in order to achieve going concern value, at least for the North Carolina facility. Bids were solicited and sale procedures were approved. However, no acceptable bids were received.

5.      Within a short period following the filing, Conway McKenzie elected to resign from its engagement with the Debtors due to the termination of the Debtors' officers and directors insurance policies. Without management, the Debtors' cases were converted to Chapter 7 on October 31, 2018, and C. Edwin Allman, III, was appointed to serve as Trustee. Contemporaneously with his appointment, at the request of the Bankruptcy Administrator, an Order was entered authorizing the Trustee to continue the business of the Debtors' in order to effectuate an orderly wind down. The Trustee's authority to operate business was ultimately extended through May 17, 2019, at which point all business operations ceased. See: *Sixth and Final Order Regarding the Trustee's Authority to Operate the Debtors' Businesses in Connection with an Orderly Wind Down and Liquidation of the Estates [docket #488 in PQM case]*.

6.      After the Trustee's authority to operate the Debtor's business expired, the Trustee's efforts became focused entirely on the liquidation of the Debtor's remaining assets. A series of real estate sales occurred in both Florida and North Carolina, and by late summer of 2019 all tangible and personal property assets were liquidated.

7.      In an effort to maximize estate assets, the Trustee engaged an outside law firm, ASK LLP to pursue preference claims. In addition, the Trustee engaged another outside law firm, Fox Rothschild LLP to pursue certain fraudulent conveyance and breach

of fiduciary duty claims on behalf of the estate. The preference litigation and the fraudulent conveyance/breach of fiduciary duty litigation have now concluded with substantial recoveries on both.

8.     As part of the initial financing provided in 2015, Madison took an assignment of certain representations and warranties insurance policies and it took steps to assert claims and collect on such policies. Efforts to resolve the representations and warranties claims through negotiation were unsuccessful and the claims went to arbitration. In July 2022 an arbitration award was entered and subsequently paid.

9.     All estate assets, inclusive of representation and warranties insurance coverage, have now been fully liquidated, and, upon final claims determinations, the case will be ripe for closure. From the bankruptcy estates Madison has received $17,043,253.31. From the liquidation of its collateral Madison has received $4,304,692.61, for a total of $21,347,945.92, more specifically itemized as follows:

| | |
|---|---:|
| The Trustee Bankruptcy Account for Ei LLC | $6,945,245.44 |
| The Trustee Bankruptcy Account for PQM | $1,800,000.00 |
| The Trustee Bankruptcy Account for PQ Real Estate | $49,871.33 |
| The Trustee Bankruptcy Account for JBTRS | $168,316.72 |
| Funds Received When Block Accounts Closed | $579,819.82 |
| Funds from Chapter 11 | $7,500,000.00 |
| Madison Liquidation | $4,304,692.61 |
| **Total** | **$21,347,945.92** |

The current status of the estate accounts for Ei and PQM are as follows:

| Status of Estate Bank Accounts as of February 15, 2023 | | | |
|---|---|---|---|
| Bankruptcy Estate | Unencumbered Funds | Madison Cash Collateral | Current Balance |
| Product Quest | $6,478,832.27 | $343,450.48 | $6,822,282.75 |
| Ei LLC | $2,517,681.97 | $498,676.12 | $3,016,358.09 |
| TOTAL | $8,996,514.24 | $842,126.60 | $9,838,640.84 |

## The Cash Collateral Order

10.     Germaine to the reconciliation and proper allowance of Madison's Claim is the Cash Collateral Order, entered on an interim basis in the case during the Chapter 11

and on a final basis during the Chapter 7. The **Order Authorizing Chapter 7 Trustee to:  (A) Use Cash Collateral; and (B) Grant Adequate Protection and Provide Security and Other Relief to Agent and Lenders** [*docket #310*] (the "Cash Collateral Order") contemplated the use of cash collateral by the Debtor and the Trustee to pay liquidation expenses.  It also provided carve outs for professionals and the trustee and established adequate protection for the Madison secured claim, based on a collateral valuation of $29,000,000, as of the filing date, through the allowance of a 507(b) claim to the extent of the diminution of value of Madison's collateral thereafter.  The rationale for the Section 507(b) claim was stated in paragraphs 19 and 20 of the **Debtors' Emergency Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to Use Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (B) Granting Adequate Protection Pursuant to Sections 361 and 363 of the Bankruptcy Code, (C) Modifying the Automatic Stay, and (D) Scheduling a final Hearing Pursuant to Bankruptcy Rule 4001(C)** [*docket #12*] which provided:

> 19.    The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis. *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996). "Its application is left to the vagaries of each case . . . but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process." *Id*. (quoting *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)). Examples of adequate protection are provided for in section 361 and include, but are not limited to: (i) making a cash payment or periodic cash payments to a secured creditor to the extent that the estate's use of property will result in a decrease in the value of such creditor's interest in the property; (ii) provisions for an additional or replacement lien to the extent that the use of such property will cause a decrease in the value of such entity's interest in the property; and (iii) granting such other relief as will result in the realization by the creditor of the indubitable equivalent of such creditor's interest in the property. *See In re C.G. Chartier Constr., Inc.*, 126 B.R. 956, 960 (E.D. La. 1991).

> 20. In accordance with section 363(e) of the Bankruptcy Code, and consistent with the purposes underlying the provision of adequate protection, the proposed Interim Order provides that adequate protection will be provided to the Agent and the Lenders in connection with the use of the Cash Collateral, as follows: (a) Replacement Liens on all assets of the Debtors' estates and subject to the Permitted Priority Liens; and (b) an administrative expense claim equal to the aggregate diminution in value of the Prepetition

Collateral under section 507(b) of the Bankruptcy Code; <u>provided</u> that such claim shall be subject to the Permitted Priority Liens, including the Carveout.

11.    Specifically, provisions of the Cash Collateral Order relevant to the 507(b) determination is paragraph C.6. of the findings which states:

> 6.    pursuant to the Interim Orders and this Order, Agent's interests in Prepetition Collateral will be adequately protected, and for purposes of Code §§ 506(c) and 507(b) and Fed. R. Bankr. P. 3012, as of the Filing Date, the value of the Lenders' interest in the Prepetition Collateral (inclusive of claims asserted in connection with representations and warranties insurance coverage) was not less than $29,000,000; <u>provided</u>, <u>however</u>, that nothing herein shall prejudice Agent's and any Lender's right to later: (1) assert that their respective interests in the Prepetition Collateral lack adequate protection; and (2) seek a higher valuation of the Prepetition Collateral;

12.    In paragraph 4(c) the Cash Collateral Order decrees:

> (c)    <u>Allowed Code § 507(b) Claim</u>. If and to the extent the adequate protection of the interests of Agent and Lenders in the Prepetition Collateral granted pursuant to the Interim Orders or this Order proves insufficient, Agent and Lenders shall have an allowed claim under Code § 507(b), subject to the Carveout, in the amount of any such insufficiency, with priority over (1) all costs and expenses of administration of the Cases that are incurred under any provisions of the Code; and (2) the claims of any other party in interest under Code § 507(b).

13.    In addition to the foregoing, the Cash Collateral Order made provisions for carveouts from Madison's collateral for Trustee commissions allowable under § 326(a) of the Bankruptcy Code and a carveout of up to $60,000 for fees and expenses allowed to the Trustee under § 330 in the event no unencumbered funds were available for the payment of same. During the course of this case the Trustee has received interim commissions from the carve out. The additional commissions and attorney fees for the Trustee and his law firm will be paid from unencumbered funds pursuant to the Cash Collateral Order.

## The Madison Claim Dispute

14.     The Madison Claim asserted secured and super priority status in the amount of $156,976,703.11.  The liquidation of Madison's collateral resulted in total payment to Madison of $21,347,945.92.  Other than Madison's cash collateral being held by the Trustee, the Estates have no other assets subject to Madison's lien.  Consequently, Madison's secured claim has been fully liquidated and upon distribution of its cash collateral it will have received $22,190,072.52 from the liquidation of its collateral.[2]

15.     The controversy over the proper amount to be allocated to Madison's 507(b) claim lies in differing interpretations of the Cash Collateral Order.

16.     It is Madison's position that its 507(b) claim should be allowed in an amount equal to the difference between amounts received during the course of the case and $29 million.  Subtracting from $29 million the amount Madison has been paid and the remaining Madison cash collateral held by the Trustee, leaves $6,809,927.48 which Madison contends is the correct amount of its 507(b) claim.

17.     The Trustee agrees that Madison is entitled to a § 507(b) claim pursuant to the terms of the Cash Collateral Order.  However, the Trustee's position is that Madison's § 507(b) claim should be calculated based on the value of its interest in the collateral as of the petition date as opposed to amounts actually received by Madison from the liquidation of its collateral.  Under this analysis, the Trustee believes that the interest of Madison in its collateral as of the petition date was $26,375,077.96.  Based on this analysis, Madison's § 507(b) claim would be in the amount of $2,624,922.04.  Attached hereto as Exhibit A and incorporated herein by reference is a chart setting forth the Trustee's analysis of the value of Madison's collateral as of the petition date.

18.     The amount of Madison's § 507(b) claim will directly and substantially affect the distribution of the unencumbered funds of the Estates.  Proforma distribution schedules reflecting the differences are attached hereto as Exhibit B and Exhibit C.  As the Schedules demonstrate, if Madison's position is upheld, less than 35% of employee wage claims will be paid and there will be no distribution to tax claimants or to general unsecured creditors.  Conversely, if the Trustee's position is upheld, all priority claims will be paid in full and a small distribution is projected to be made to general unsecured creditors.

---

[2]  To the extent remnant assets (refunds, deposits, unclaimed funds, etc.) come into the Trustee's position, the settlement would authorize these to be delivered to Madison as well.

## The Settlement

19.     The settlement proposed herein will give Madison an allowed § 507(b) claim in the amount of $4.85 million, for which the Estates of Ei and PQM will be jointly and severally liable.  Upon approval of settlement the Trustee would distribute Madison's cash collateral currently in the Trustee accounts in the amount $343,450.48 in PQM and $498,676.12 in Ei.  In order to fully compensate Madison for its secured claim, the Order approving the settlement will authorize the Trustee to distribute any remnant assets it receives subsequently (including assets received after the case is closed and the Trustee is discharged) directly to Madison.  Typically these assets consist of insurance refunds or unclaimed funds, all of which would have been subject to Madison's pre and post petition liens.  Madison's remaining general unsecured claim will be allowed in the amount of $129,936,630.59 (the amount of Madison's claim less payments received and to be received, including the § 507(b) claim).  Both Estates are be jointly and severally liable for the Madison general unsecured claim; however, pursuant to the settlement, the Madison general unsecured claim  shall not share in the first $150,000.00 distributed in the aggregate to general unsecured creditors holding valid claims in PQM and Ei, following which the Madison general unsecured claim shall share proportionately with the valid general unsecured claimants in each case.

20.     The Madison settlement is contingent upon approval of a settlement between the Trustee and Jonathan Walker, on behalf of himself and the certified class in the action pending against the Trustee (Adversary Proceeding Number 18-06028) (the "WARN Action" or the "WARN Claimants").  A motion seeking approval of the settlement of the WARN Action is being filed contemporaneously with the filing of this Motion.

21.     As is evident from a comparison of the proforma distribution schedules set forth in Exhibits B and C, the WARN Claimants are substantially impacted by Madison's § 507(b) Claim.  Consequently, Madison, counsel for the WARN Claimants and the Trustee have been actively engaged in negotiations in an effort to achieve results mutually beneficial to Madison, the WARN Claimants and the bankruptcy estates.  These negotiations have resulted in an agreement pursuant to which the WARN Claimants shall be paid an aggregate of $2.65 million in full and complete satisfaction of their claims.  Attached as Exhibit D  is a copy of the letter agreement memorializing the settlement.  The distribution of such amounts will be made in accordance with the WARN settlement agreement.  Attached hereto as Exhibit E and incorporated herein by reference is a proforma distribution schedule which assumes approval of both the WARN and Madison settlements.

22.     In considering the fairness of the settlement amount of Madison's § 507(b) claim, it is important to consider it in the context of the universe of general unsecured

claims in this case and the companion case. The following chart represents what the Trustee anticipates will be the universe of general unsecured claims, excluding WARN, unsecured claims[3], in these cases:

### Product Quest Manufacturing (18-50946)

|  | Amount | Percent |
|---|---|---|
| Madison General Unsecured Claim | $129,936,630.59 | 83.474182% |
| Other General Unsecured Claims | $25,724,230.21 | 16.525818% |
| **TOTAL** | **$155,660,860.80** | **100.000000%** |

### Ei LLC (18-50945)

|  | Amount | Percent |
|---|---|---|
| Madison General Unsecured Claim | $129,936,630.59 | 86.472138% |
| Other General Unsecured Claims | $20,327,528.25 | 13.527862% |
| **TOTAL** | **$150,264,158.84** | **100.000000%** |

From the foregoing it appears that the Madison unsecured claim represents approximately 85% of the universe of general unsecured claims in these cases. As Exhibit B reflects, even if the matter was not settled and the Trustee were to prevail in litigating the Madison Claim, general unsecured creditors other than Madison, which total just over $46 million, would share in a distribution of approximately $285,000 or 0.6% of their respective claims.

23.    The settlement proposed herein is fair and represents a reasonable compromise for all parties. Approval of this settlement and the WARN Action settlement will enable this case to be concluded expeditiously without further litigation which would be expensive and time consuming. Given the number of claimants and the likely amount to be received by each, further litigation, and the accompanying delay it would necessarily entail, makes no sense.

WHEREFORE, the Trustee prays that the Court enter an Order:

1.    Approving the Trustee's settlement with Madison as described herein;

2.    Authorizing the Trustee to pay Madison the cash collateral being held by the Trustee in his account following entry of an Order approving this settlement;

---

[3] The unsecured portion of the WARN claims are waived pursuant to the settlement.

3.     Authorizing the Trustee to convey all remnant assets to Madison, including authorization to the Trustee to forward to Madison any funds received by the Trustee attributable to this case hereafter;

4.     Approving a § 507(b) claim for Madison in the amount of $4,850,000.00 to be paid in part by this estate and in part by the PQM estate contemporaneously with other distributions made by the Trustee consistent with the Final Reports, filed in this case and in the PQM estate;

5.     Approving an allowed general unsecured claim for Madison in this case in the amount of $129,936,630.59 with the provision that such claim shall not share in the first $150,000.00 distributed in the aggregate to general unsecured creditors in this case and the accompanying case of Product Quest Manufacturing, LLC (18-50946) with Madison's general unsecured claim sharing proportionately thereafter in any distributions;

6.     Conditioning the effectiveness of the Order approving the Madison settlement on the approval of the settlement of the WARN Action, and the entry of an order by the Court approving the WARN Action in form and substances acceptable to the Trustee, the WARN Claimants and Madison; and,

7.     For such other relief as is just and proper to the Trustee.

This the _7_ day of March, 2023.

/s/ C. Edwin Allman, III
C. Edwin Allman, III, Trustee
N.C. State Bar No. 8625

OF COUNSEL:
ALLMAN SPRY DAVIS LEGGETT & CRUMPLER, P.A.
380 Knollwood Street, Suite 700
Post Office Drawer 5129
Winston-Salem, NC 27113-5129
Telephone: (336) 722-2300 | Facsimile:  (336) 722-8720

**EXHIBIT A**

## Analysis of Value of Madison Capital's Collateral

| | Cash On hand 9/7/2018 | Receipts During Ch. 11 | Sale of Assets During Ch. 7 (Does Not Include Preferences or Lawsuit) | Petition Date Value of Collateral Liquidated by Madison | Minus Taxes Paid by Estate | Minus Real Estate Liens | Plus Commission Withheld Prior to T'ee Receipt |
|---|---|---|---|---|---|---|---|
| As of the Petition Date | | | | $3,407,974.00 | | | |
| September 2018 [docket #231-PQM] | $4,689,116.00 | $3,539,626.00 | | | | | |
| October 2018 [docket #300-PQM] | | $4,035,030.00 | | | | | |
| Product Quest Manufacturing | | | $2,595,616.54 | | | | |
| EI LLC | | | $8,039,157.67 | | | | |
| PQ Real Estate | | | $66,529.99 | | | | |
| JBTRS | | | $199,392.29 | | | | |
| Ck #2017 dt 12/18/19 to County of Volusia (PQM) | | | | | ($600.58) | | |
| Ck #2014 dt 10/3/19 to Volusia County (PQM) | | | | | ($88,165.34) | | |
| Ck #2086 dt 12/5/2019 to Rowan County Tax Administration (EI) | | | | | ($599.39) | | |
| Ck #2085 dt 12/5/2019 to Rowan County Tax Administration | | | | | ($3,647.97) | | |
| Ck #2080 dt 8/27/2019 to Rowan County | | | | | ($96,141.30) | | |
| Ck #2071 dt 8/2/2019 to Trane U.S. Inc. (EI) | | | | | | ($25,000.00) | |
| Tiger Capital Group (PQM) | | | | | | | $11,071.27 |
| Tiger Capital Group (EI) | | | | | | | $5,718.78 |
| | | | | | | | |
| | | | | | | | |
| TOTALS | $4,689,116.00 | $7,574,656.00 | $10,900,696.49 | $3,407,974.00 | -$189,154.58 | -$25,000.00 | $16,790.05 |

**VALUE OF MADISON'S COLLATERAL**          $26,375,077.96

**EXHIBIT B**

### Pro Forma
### Payment Distributions
### Assumes Madison 507(b) Litigated Successfully [1]

| | | |
|---|---|---|
| Est. Cash On Hand [2] | $9,838,640.84 | |
| Less Madison Cash Collateral | ($842,126.60) | |
| Unencumbered Funds Available | | $8,996,514.24 |
| | | |
| Madison 507(b) | ($2,624,922.04) | |
| Allman Spry | ($800,000.00) | |
| 503(b)(9) | ($250,411.73) | |
| Administrative Claims Estimate | ($8,533.87) | |
|     Trane USA Inc. - $6,800.00 | | |
|     Aenta Life Ins. Co. - $1,704.16 | | |
| Wage Claims (Non-WARN) | ($23,535.62) | |
| WARN Claim | ($3,097,389.61) | |
| Tax Claims | ($53,581.37) | |
| Employer's Share of Withholding Taxes [3] | ($150,000.00) | |
| Misc. Admin. and Priority | ($70,000.00) | |
| Total Admin. and Priority | | ($7,078,374.24) |
| | | |
| Funds Available for Unsecured | | $1,918,140.00 |
| Madison at 85% [4] | | $1,630,419.00 |
| Non-Madison Unsecured at 15% [5] | | $287,721.00 |

[1] *For purposes of this chart, the two estates are combined. The Trustee expects the prorated distributions in each case to be roughly equivalent.*

[2] *Balance as of February 15, 2023. This amount will decrease over time due to bank and storage fees.*

[3] *This amount will increase or decrease depending upon actual wage payments to WARN creditors.*

[4] *As detailed in paragraph 22 of the Motion, Madison holds 85% of general unsecured claims in these cases. Under this scenario, Madison would receive a total final distribution from the estates of approximately $5.0 million.*

[5] *The universe of non-Madison general unsecured claims is approximately $46.2 million and each claimant's pro-rata share of a total distribution of $285,000 would result in a recovery of 0.6% on their respective claims.*

EXHIBIT D

 **Allman Spry**

ALLMAN SPRY DAVIS LEGGETT & CRUMPLER, P.A.
Attorneys and Counsellors at Law

C. Edwin Allman, III

Direct Dial: (336) 631-1433
Facsimile: (336) 722-8720
Email: ceallman@allmanspry.com

February 1, 2023

*Via Email*
Dimitri G. Karcazes, Esq.
Goldberg Kohn Ltd.
55 E. Monroe St., Ste. 3300
Chicago, IL 60603

*Via Email*
Rene Roupinian, Esq.
Raisner Roupinian LLP
270 Madison Avenue, Suite 1801
New York, NY 10016

*Via Email*
Jack Raisner, Esq.
Raisner Roupinian LLP
270 Madison Avenue, Suite 1801
New York, NY 10016

Re:  *Product Quest Manufacturing, LLC ("PQM") - Case No. 18-50946;*
*Ei LLC ("Ei") - Case No. 18-50945; Settlement Memorandum Between*
*The Trustee of Ei and PQM, Jonathan Walker on Behalf of Himself and*
*The Certified Class in the Action Pending Against the Trustee (Adversary*
*Proceeding Number 18-06028) (the "WARN Action" or the "WARN*
*Claimants") and Madison Capital Funding, LLC, as Agent ("Madison")*

Dear Rene, Jack and Dimitri:

This letter will memorize a settlement reached in the above cases concerning the amount and priority of your clients' claims. With respect to Madison, this letter is intended to suffice as the settlement agreement upon which a Motion to Compromise pursuant to Bankruptcy Rule 9019 will be based. The settlement of the WARN Action, on the other hand, will require a separate, more comprehensive agreement, the terms of which have already been largely negotiated and are not inconsistent with this letter. The agreed settlement is as follows:

1.    Both the Madison and WARN Action settlements are subject to court approval and each is contingent upon approvals of both. Consequently, it is anticipated that both settlements will be heard by the court on the same date.

*Physical Address:*
380 Knollwood St., Suite 700
Winston-Salem, NC 27103

*Mailing Address:*
Post Office Drawer 5129
Winston-Salem, NC 27113-5129

Telephone: (336) 722-2300
Toll Free: (800) 520-1632
www.AllmanSpry.com



*February 1, 2023*
*Page No. 2*

    2.    The Ei and PQM Estates are jointly and severally liable for payment of the settlement amounts agreed herein. Madison and WARN Claimants agreed upon claims will be paid in accordance with, and upon approval of, Final Reports filed by the Trustee.

    3.    The WARN Claimants consist of Ei and PQM employees entitled to WARN benefits other than Adam Labar and Patricia Jacobson who have opted out of the Class pursuant to procedures previously approved by the Court. ~~To the extent additional eligible employees opt out of the Class, the WARN Action settlement amount will be reduced by the amount of their adjusted priority claims.~~ 

    4.    WARN Claimants shall be paid an aggregate of $2.65 million in full and complete satisfaction of their claims. The distribution of such amount will be made in accordance with the more comprehensive settlement agreement referred to above.

    5.    Madison shall have an allowed § 507(b) claim in the amount of $4.85 million. At this time, the Trustee is holding cash collateral for Madison in the amount of $343,450.48 in PQM and $498,676.12 in Ei. These amounts constitute Madison's remaining secured claim and shall be paid to Madison upon Court approval of the settlement proposed herein. In addition and to further satisfy Madison's secured claim, all of the Trustee's rights and interests in remnant assets will be assigned to Madison and the Trustee shall forward the same to Madison if and when such assets are delivered to the Trustee. Madison's remaining general unsecured claim shall be allowed in the amount of $131,956,731.17. The Madison general unsecured claim shall be subordinate to the first $150,000.00 distributed in the aggregate to general unsecured creditors holding valid claims in PQM and Ei, following which the Madison general unsecured claim shall share proportionally with the valid general unsecured claimants in each case.

    6.    The parties shall proceed in good faith to prepare such documents as may be reasonably necessary to effectuate this settlement.

Sincerely,

C. Edwin Allman, III, Trustee

*- Signature Page Follows -*

*Physical Address:*
380 Knollwood St., Suite 700
Winston-Salem, NC 27103

*Mailing Address:*
Post Office Drawer 5129
Winston-Salem, NC 27113-5129

Telephone: (336) 722-2300
Toll Free: (800) 520-1632
www.AllmanSpry.com

*February 1, 2023*
*Page No. 3*

AGREED:

WARN Claimants:

By: _____
    Rene S. Roupinian, Esq.
    Jack Raisner, Esq.
    Counsel for WARN Claimants
    Raisner Roupinian LLP
    270 Madison Avenue, Suite 1801
    New York, NY 10016


**Madison Capital Funding, LLC, as Agent:**

By: _____
    Dimitri G. Karcazes, Esq.
    Counsel for Madison Capital Funding, LLC
    Goldberg Kohn Ltd.
    55 E. Monroe St., Ste. 3300
    Chicaco , IL 60603

*Physical Address:*
380 Knollwood St., Suite 700
Winston-Salem, NC 27103

*Mailing Address:*
Post Office Drawer 5129
Winston-Salem, NC 27113-5129

Telephone. (336) 722-2300
Toll Free. (800) 320-1632
www.AllmanSpry.com



**EXHIBIT C**

**Pro Forma**
**Payment Distribution**
**Assumes Madison Prevails on 507(b) Claim Litigation** [1]

| | | |
|---|---:|---:|
| Cash on Hand [2] | $9,838,640.84 | |
| Less Madison Cash Collateral | ($842,126.60) | |
| Unencumbered Funds Available | | $8,996,514.24 |
| | | |
| Madison 507(b) | ($6,809,927.48) | |
| Allman Spry | ($800,000.00) | |
| Admin. 503(b)(9) | ($250,411.73) | |
| Admin. | ($8,533.87) | |
|    Trane USA Inc. - $6,800.00 | | |
|    Aenta Life Ins. Co. - $1,704.16 | | |
| Total Admin. Claims | | ($7,868,873.08) |
| | | |
| Available for WARN | | $1,127,641.16 |

**Total Madison Payments**

| | |
|---|---:|
| Cash Collateral | $842,126.60 |
| 507(b) | $6,809,927.48 |
| Total | $7,652,054.08 |

[1]  *For purposes of this chart, the two estates are combined.  The Trustee expects the prorated distributions in each case to be roughly equivalent.*

[2]  *Balance as of February 15, 2023.  This amount will decrease over time due to bank and storage fees.*

**EXHIBIT E**

**Pro Forma**
**Payment Distribution**
**Assumes WARN & Madison Settlement [1]**

| | | |
|---|---:|---:|
| Cash On Hand [2] | $9,838,640.84 | |
| Less Madison Cash Collateral | ($842,126.60) | |
| Unencumbered Funds Available | | $8,996,514.24 |
| | | |
| Madison 507(b) | ($4,850,000.00) | |
| Allman Spry (Estimate) | ($780,000.00) | |
| 503(b)(9) | ($250,411.00) | |
| Admin. Claims Estimate | ($8,533.87) | |
|    Trane USA Inc. - $6,800.00 | | |
|    Aenta Life Ins. Co. - $1,704.16 | | |
| Non-WARN Wage Claims | ($23,535.62) | |
| WARN Claims | ($2,650,000.00) | |
| Tax Claims | ($53,000.00) | |
| Employer's Share of Withhold Taxes [3] | ($150,000.00) | |
| Miscellaneous | ($70,000.00) | |
| | | ($8,835,480.49) |
| Available for Unsecured [4] | | $161,033.75 |

[1] *For purposes of this chart, the two estates are combined.*
*The Trustee expects the prorated distributions in each case to be roughly equivalent.*

[2] *Balance as of February 15, 2023. This amount will decrease over time due to bank and storage fees.*

[3] *This amount will increase or decrease depending upon actual wage payments to WARN creditors.*

[4] *Under the settlement Madison would not share in the first $150,000 distributed to unsecured creditors.*